My name is Paul Turner with the Federal Public Defender Office for the District of Nevada. I'm here this morning to represent Ricky Foote. Obviously, my main purpose here is to respond to any questions the Court has. What I would like to do, with the Court's permission, would be to explain as quickly as I can why Mr. Foote was improperly denied an appeal, a direct appeal that every other litigant in Nevada is entitled to, a non-conflicted direct appeal. As the record shows, Mr. Foote was unhappy with his original lawyer, a public defender named Camille Chamberlain. He actually sued her and her office. She responded by moving to dismiss. And in paragraph 6 of her motion, which is at excerpts of record, page 31, she indicates that there is a, quote, clear conflict of interest, unquote, and, therefore, cannot adequately represent the interests of the defendant. These are not statements by Ricky Foote. These are statements by Ms. Chamberlain. The Court, at that time Judge Levitt, who later went to the Nevada Supreme Court, but he was the Court in the case at that moment, the Court accepted her statement and so ordered her withdrawal. Mr. Foote at that point had enough funds to hire a retained attorney, Mr. Cherry, and Mr. Cherry ended up trying the case for Mr. Foote. At the end of the trial, however, at the end of sentencing, Mr. Cherry advised the Court that he would not be retained for an appeal. The Court now, Judge White, not the original judge, but Judge White, new judge, Judge White apparently has some concern about a possible conflict here and suggests, is there any problem, because Mr. Cherry, in essence, offers the public defender office as an alternative to himself. Mr. Foote, of course, is there at that hearing, but there's no resolution at that hearing. And the most critical fact here is that there was no ruling by Judge White at that point that any conflict had been resolved or was over with. No ruling at all. The matter was continued at Mr. Cherry's request to February 29, seven days later. At that hearing, Mr. Foote was not there. He was on his way to prison. He was being transported. At that hearing, the public defender's office confirms as counsel now for Mr. Foote, unknown to him, of course, indicates that there had been a problem before, doesn't really know the status, and this is Mr. Thompson, I believe, who had appeared for the public defender office, will advise the Court, if he learns anything else, again, I would emphasize, no determination by the Court at all that any prior conflict, which the Court had previously found, had been resolved. I digress and say that Judge White may well not have fully understood that Judge Leavitt had entered an order recognizing at the request of the public defender office that they had a clear conflict of interest. The matter goes forward to appeal. Mr. Foote, somewhere along the way, learns that he now has the public defender as his attorney. He writes a letter, which is documented in the file in his State Post-Conviction Petition at excerpts of record, pages 405 but, more appropriately, 408. I would frankly admit to the Court I've searched high and low for that letter. I do not have it. It's not in our file. However, Mr. Foote, in a verified petition, indicates he wrote that letter to the public defender saying, I want you to withdraw and please advise the Court of that. As far as I can tell, the record shows no advice was ever made by the public defender. They continue on and they appeal for Mr. Foote. Two-issue appeal. One deals with the fact that he was not in the – that he had left the courtroom at some point during the trial and there was a comment on it by the Court. Frankly, I doubt that would be a winning issue in most cases. Then there was a sufficiency of the evidence claim, which was one page in total length. Not a great appeal by, I believe, by any standards. Foote loses his appeal. At that point, Mr. Foote files a timely State post-conviction petition pro se. We're now in January of 1990. And in ground four of that petition, he says, I had conflicted counsel on appeal and that was wrong, constitutionally wrong. There's a hearing held. Again, Mr. Foote is not there. Judge White is there, however, and Deputy Public Defender Thompson represents Mr. Foote. In the record, the minutes show that he is representing Ricky Foote at that point. The State is allowed 21 days to file a response, which they do. Interestingly, in their response, at pages 413 and 421 of the record, of the exact excerpts of record, they say that there is an unspecified conflict. That's an amazing statement in a record like this. It wasn't an unspecified conflict. The district court, Judge Leavitt, had found that a conflict existed. There wasn't anything unspecified about it at all. Unfortunately, it's treated as if it's a new idea. It just came up in the case. That's false. It was not a new idea. The record hadn't been reviewed by the parties involved. The matter goes on to a hearing at which Deputy Public Defender appears for Mr. Foote on February — excuse me, on March 21, 1990. The public defender moves to withdraw. He files a written motion. He says he had been appointed in the post-conviction. He asks to withdraw, and the Court allows him to withdraw. The order which denies Mr. Foote's 1990 first State post-conviction indicates that the public defender had been his lawyer. We now have two proceedings poisoned here. We have Mr. Foote's direct appeal poisoned by this conflict. We now have his first State habeas, a critical event for him, because everything downstream, all the procedural default downstream, everything negative, keys off of this original petition which is dismissed. Well, we know all of these things occurred, but can I ask you a quick question? Sure. Yes, Your Honor. Do we need to find prejudice? Your Honor, I don't believe we do, because I believe Holloway, I think this is a Holloway-type case, that the conflict was not only made clear. In fact, this is beyond Holloway, actually, because here we have not only an objection on the record which was made clear by Mr. Foote at the time of this situation, but we have a finding by the Court that there was a conflict. In other words, we have a conflict of record, if you will, which I think gets us into Holloway territory here, which means, I believe, two things. One, that the State court should have properly reviewed this matter when it came up that there might be, when Judge White was keyed into the fact that a conflict could be here, he should have properly investigated the situation. He should have brought in Mr. Foote, brought him back in from prison and found out what was going on here. Instead, it just sort of cavalierly went forward. The other, I'm sorry. How would you distinguish Mikens v. Taylor? How would you distinguish? Mikens? Mikens v. Taylor. Your Honor, my reading of Mikens, and I'm sure there are a lot of readings of Mikens, but the one that counts is the one this Court has. But my reading of Mikens is that Mikens applies when you have a, when you don't have a conflict. Well, first of all, the facts of Mikens. Mikens, the conflict wasn't even known until Federal post-conviction, as Your Honor knows. Here the conflict was known to the State judge right up front. It was known to everyone. So I think that's one. It's just factually distinguishable from Mikens. And in Justice Scalia's opinion in Mikens at the end. For the Court. For the Court. Your Honor, if I might digress and pull that out. Sure. It's nice to see a lawyer who has all the opinions handy there. The, excuse me. The last thing that Justice Scalia says, the last paragraph. It's on actually page 1245. What page are you reading from? I'm reading from, Your Honor, from page, in the U.S. report citation, it would be page 173 of Mikens. It's page 1245, I guess, of the lawyer's edition. 1245. Of the lawyer's edition, yes, sir. It's the last paragraph before section 3 of that opinion. And this is from Justice Scalia. He says, He states pretty clearly in another part of the opinion that there must be a reasonable probability that the unprofessional errors will result in a conflict. That's prejudice. Yes, I'm sorry, Your Honor. That's prejudice. That is, he's in the majority opinion of the Court. They cite Cronick, they cite Strickland, and they say that the outcome, if there is a violation, it has to show that the outcome of the case would have been different. And that's the way they usually say you have to show prejudice. Your position was you don't have to show prejudice. That's correct, Your Honor. I seem like I forgot to ask for my two minutes. Can I respond? Yes, go ahead and answer the question. I'd love to have you answer it, because I'm curious. No, I don't think there's, regrettably, I don't think there's a simple answer. I wish there were. But I think my feeling is in an irreconcilable conflict situation, which we have in our case, that and a case where the Court has put on notice and is supposed to do an exception, that's the breakdown, where you've objected. In essence, you don't get a lawyer. You get a conflicted lawyer, and that's no lawyer. I don't believe you've got to show prejudice under Mickens or any other case. Well, you're stretching the exception pretty far, because the exception indicates not a bum lawyer, but you have no lawyer. That's where the exception is under Mickens. But how do you deal with this language that you have a responsibility to show that the outcome would have been different had there been a different lawyer? Well, outcome different would be, of course, over in Strickland, I believe. In Mickens, as I understand it, they're saying you have to show an adverse effect on the performance of the attorney. So I believe I'm right about that. And I can show an adverse effect on the performance of this attorney. I don't believe you need to, but I can, because his appellate performance is abysmal. How would it have come out different? Well, I think, Your Honor, if a legitimate vouching claim had been raised on appeal in the context of this case, I think the vouching claim about Mr. Sharrocky, the key witness. Oh, yeah. I read that. But what you're saying is I understand it. Because there was a conflict, the attorney should have been removed. If I understand Mickens, that isn't enough. You have to show not only that they should have been removed, but for that there would be a different outcome. I understand your point, Your Honor. And I don't understand Mickens any more than what I read. I've read it so many times. Well, not as many as you have, but I, frankly, can find very little consistency in Mickens, to be real blunt about it. I still think Holloway has plenty of muscle. It's still the law. And I think this Court's ruling, for example, in the Plumlee case, recognizes that a court has a duty to investigate these things very, very carefully. I noticed that you brought that to our attention, the 29J. I was wondering when you were going to tell us about Plumlee. No, I was a little slow. I was slow on that, but I know. That's our case. It's our office's case, too. I should have been quicker. I'd like to say a lot of other things, but I think I'd better sit down. We'll give you a couple minutes for rebuttal. Thank you very much. May it please the Court. My name is David Neidert. I'm a Senior Deputy Attorney General for the State of Nevada. Frankly, looking at the argument, I think it really comes down to this. Mr. Foote argues Plumlee. He argues Holloway. He argues a host of cases. And those all have to do with counsel's representation at trial. This case has to do with counsel's representation on appeal. And frankly, I think that distinction is absolutely undeniably crucial. Do you have a case on that? Is there any case that says these rules all apply to trial counsel but not appellate counsel? I'm not aware of a case that says that, Your Honor. I can't cite one off the top of my head. It's just your view that there's a distinction. And I think there's a critical distinction. I mean, in my brief, I drew the analogy with the right to self-representation on appeal. Because I think that analogy holds for the simple reason that appellate counsel is not required to raise every issue the defendant wants to raise. Quite frankly, not required to raise any issue at all that a particular defendant raises. And that in the right to self-representation case where the Supreme Court said you do not have a right to represent yourself on appeal, whereas you do have the absolute right to represent yourself on trial, I can't imagine a bigger conflict than a criminal defendant that said, I want to trial. And I did all these issues. And I did everything. And the jury still found me guilty. And now having somebody else being forced upon this formerly self-representing client on appeal. I can't imagine a bigger kind of conflict of interest than one where a person has counsel completely against their will. And that, the Supreme Court said, was perfectly okay because the nature of appeal is fundamentally different than the nature of trial. And I think that's where, with respect to the issue in this case, where we turn into a Mickens analysis, and then we turn into a Strickland type analysis with respect to prejudice. In that, Mr. Foote's counsel, assuming, let's assume for a fact that there was a real conflict of interest between the public defender and Mr. Foote on direct appeal. Let's just assume that for the sake of argument. If that's true, then Mickens requires somehow that that conflict had an adverse effect on the representation. What would that kind of adverse effect be? I don't think it's not raising an issue that Mr. Foote wants raised. He doesn't even have that right with the point of counsel he's happy with. Or that he was unconflicted with, at least. I think that has to be some sort of action, like not filing a notice of appeal at all. Not filing a brief at all. It would have to be raised to that level for there to be an adverse effect on the representation with a conflict. I don't think we've ever held that, though. I think that when you come to appellate, then you can go and you can look at a Strickland analysis with respect to prejudice. What Foote is asking for is a per se rule. Because there was a conflict of interest. Because of that, the appeal shouldn't count. And I don't think there's any case that holds that either, Your Honor. I think when you look at it, if there's appellate issues, then you have to raise a claim of ineffective assistance of counsel on appeal. And then under Strickland and its progeny, you have to show prejudice. And that is you have to show that there's a reasonable probability the result of the appeal would have been different. And I think that's where we're at. I don't think it's a per se rule, and that's what Mr. Foote advocates. I'm not saying that we can just ignore it. I'm saying that you have to look at it in terms of Strickland. Because I think what you have with respect to ineffective counsel, you've got the two lines of cases. You've got the chronic line of cases, and you've got the Strickland line of cases. But the distinction between those two lines of cases is one where there's a complete breakdown of counsel, and there's effectively no counsel at all for chronic purposes, and whether you can show prejudice under Strickland. Assuming that you're right and this turns on prejudice, he, opposing counsel, has suggested that there was significant prejudice in this case because of, for instance, the failure to raise vouching and other things. So what is your comment? Well, my comment on that is you look at that under a Strickland analysis, and that with respect to the vouching claim, as I argue in my brief, he can't reach a prejudice, he can't show prejudice with respect to that either, that in fact what the comments that he complains about as being vouching were not improper, either constitutionally or under Nevada law. So I don't think he can show that kind of prejudice. But I don't think that just because there was an issue that he thinks is stronger that was raised by theoretically a conflicted counsel, that you can't do that two-part Strickland analysis. In other words, there's nothing in the record that would demonstrate that counsel did anything as a direct result of the conflict to benefit some third party or some other client that they were representing that would have prejudiced this client? No, I think they looked and they saw basically it was sort of a strange facts case. And I think the facts of this case are strange in a lot of ways. But what grounds do you raise in those situations? Mr. Foote had a trial. The jury decided they would choose to believe the victim of the case, and they found him guilty of the offenses. So what issues do you have? And the appellate counsel has to look and say, well, what issues were there actual objections raised to? And in the vouching issue, there was not an objection raised during the closing argument, which would have preserved the issue for appeal. I mean, earlier today, this court was asking about the difference between the kind of deference that would be given by an appellate court. Those same rules certainly apply in Nevada, whether it's plain error or another kind of error. And by not objecting, the supposed vouching would have to rise to the level of plain error under Nevada law, which it wouldn't do. So we had to look at these and say, what issues do we have? We had a trial. It might not have been a perfect trial, but Mr. Foote had his day in court. The jury found him guilty. So what are we going to argue? Well, let's argue, first of all, that the trial started without him because that's clear from the record. And let's argue sufficient is the evidence because the facts of the case are rather unique. But then looking at that, what other issues are there, they chose what they thought were probably the two strongest issues. I'm not saying there were any strong issues at all, and raised it before the Nevada Supreme Court. If Mr. Foote thinks other issues should have been raised, that's where Strickland comes in. That's where he can say these issues should have been raised, and I was prejudiced because they were not raised. By the way, I would note that part of the argument with respect on this ground is that Jones v. Barnes should not somehow have continued viability with respect to choosing viable issues as a result of Strickland. And I think really that, as I mentioned in my brief, that Jones should be properly read as looking at the first Strickland prong as opposed to the prejudice prong. That counsel, by choosing issues, isn't acting in a reasonable manner. And certainly I think the public defender in this case, acting in a reasonable manner, chose two issues. They were unsuccessful on those two issues. And now Mr. Foote wants to have his entire appeal nullified because those two issues were unsuccessful. Unless this Court has any other questions, I'd be prepared to submit it. I would ask you to affirm this on all grounds. Just a few points, Your Honor. First of all, the self-representation issue, the Martinez case, really, really goes the other way, goes our way on that. What that — what I think that case makes clear is that the conflict issue is even more compelling on appeal than at trial, because at least at trial, even if you have conflicted counsel, you can fire him. You can try under Ferretta to be your own lawyer. On appeal, apparently under Martinez, you're locked out. You can't get rid of your lawyer. So the fact your lawyer is conflicted is worse than at trial. And I might note that in the Martinez case, U.S. Supreme Court, at page 163 of that opinion, indicated, comparing trial and appellate, that the overriding State interest in the fair and efficient administration of justice remains as strong as at the trial level. So there's no — appeals aren't some secondhand process. They're a first-rate process right up there with the trial. And our client deserved to have his constitutional rights protected. On the — Roberts, maybe you could help me out. Maybe this has nothing to do with the case, but you're making that comparison. There is a constitutional right to counsel at trial for any felony. There's no constitutional right on appeal. Should that make a difference in our way we put — way we analyze this? I don't — I don't think so, Your Honor. I think that through the Smith v. Robbins opinion, I think as long as the State provides for an appeal as they have to, they have to provide for everybody if they provide for anybody. I realize they could provide for no one. Then under Smith, I think your constitutional right to a proper — properly represented appeal is there. I think as long as there's an appeal that Nevada provides, then everybody is entitled to one that constitutes right. I understand that. I wondered if it made any difference that the right to trial counsel is grounded in the Constitution, where a right to counsel on appeal comes from a different source. Should that make any difference? I don't think it should make any difference if we're talking about due process and fairness, Your Honor, because I think under due process, you're entitled to a fair proceeding. And this really goes to the ultimate fairness of this proceeding. I might add on prejudice here, on adverse effect, which I really do believe is what Nickens is saying. There are two quick things I'd like to add to that. Not only, as I said, not only did Mr. Foote's appeal get poisoned, but maybe even less importantly here is that downstream at the first State postconviction, people are on the record as his lawyer who couldn't possibly be his lawyer. They're all conflicted people. That can't be right. And as we all know, if that first State postconviction is ruined under the ADPA and all the other law, you're almost dead as a postconviction litigant. So that poisoned a lot. A lot of the claims that we would like to overcome procedural default on were defaulted out of a failure to add them to that case. And under the State v. Powell case that was in my 28J letter as of this summer, 2006, it makes it very clear that if you have a lawyer on postconviction individuality, you have a right to file supplemental claims. Mr. Foote had a lawyer of record in that. No supplemental claims filed. He should not have been punished later for failure to do so when his lawyer dropped the ball, and it was a conflicted lawyer that dropped the ball. Well, your position is essentially that if somebody gets a conflicted lawyer, as your client did in this case, I don't think there's any dispute about that, and on appeal, and it turns out to be one of the country's best appellate lawyers, and this lawyer does an absolutely brilliant job but nonetheless is unsuccessful because the record just doesn't support the appeal, nonetheless, the client is entitled to reversal. If a court is prior or I should say the issuance of habeas petition. That's your position. If a court has previously ruled that there's a conflict, if there's of record a ruling on a conflict, yeah, obviously, if I was a sane defendant in that hypothetical, I would have not wanted another lawyer. I would have accepted. Well, no. If you got your conviction affirmed at the State supreme court level and you're trying to get the Federal court to issue a habeas, all of a sudden you'd really want to have that set aside. So even if you had the most brilliant appellate lawyer in the country who did the most extraordinary job but nonetheless wasn't successful, under your view, it doesn't matter. Gets a new lawyer. Gets a new, gets a habeas issue. If he's not been treated fairly procedurally. Now, if he had a chance to argue earlier, if he was in a courtroom with a hearing and he didn't do it, gone, waived. Mr. Foote was not there. When things counted here, Mr. Foote was never there. No, I'm assuming all of the facts that you've presented. Yeah. No, absolutely no prejudice, no downside to him at all. And your view is that new trial. Yes, Your Honor. I think loyalty is the most important aspect of practicing law. I just want to be sure that I know what you're coming to. And I'd ask the Court to reverse and to give Mr. Foote, to remand for an appeal, a new appeal for Mr. Foote. Alternatively, to give Mr. Foote, have the Federal court, district court, give Mr. Foote a hearing so he can have a hearing. He's never had his day in court on this and he deserves at least that. Thank you. Thank you. The case, sir, will be submitted. I want to thank you both for your presentations and we'll be in recess.
judges: Wallace, Thomas, Ezra